# Attachment A

SCANNED

MAR 3 1 2010

U.S. DISTRICT COURT MPLS

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MINNESOTA

 3

 4    ------------------------------------------------------

 5
      In re:                    )   Civil 05-MD-1708 (DWF/AJB)
 6                              )
      GUIDANT CORPORATION       )   DISPOSITIVE MOTIONS
 7    IMPLANTABLE DEFIBRILLATOR )   HEARING
      PRODUCTS LIABILITY        )
 8    LITIGATION,               )
                                )
 9    ---------------------------
                                )
10    This Document Relates     )
      To All Actions            )   9:00 o'clock, a.m.
11                              )   May 18, 2007
                                )   Minneapolis, Minnesota
12

13    ------------------------------------------------------

14

15
           THE HONORABLE JUDGE DONOVAN W. FRANK
16
          UNITED STATES DISTRICT COURT JUDGE
17
              CIVIL MOTION PROCEEDINGS
18

19

20                    *    *    *
21

22                JEANNE M. ANDERSON
23             Registered Merit Reporter
           Suite 646, 316 North Robert Street
24             St. Paul, Minnesota 55101
                  (651) 848-1221
25
```

1        Which brings us to his senior citizen's

2   claims.  Clearly, Mr. Duron chronologically qualifies

3   under either California or Minnesota, but the senior

4   citizen's claims are supplemental and derivative of his

5   freestanding consumer protection claims.  And because

6   those claims fail, so do his senior citizen claims.

7        In addition, Your Honor, I think it is

8   important to emphasize that there is no evidence here

9   that would allow any reasonable jury or the Court to

10  find that Guidant committed unfair or deceptive acts

11  within the meaning of the Minnesota Statutes, within the

12  meaning of the CLRA in California, within the meaning of

13  the UCL in California.  And I won't belabor these.  I

14  think Mr. Pratt covered them admirably, but the key

15  facts are Guidant was aware of only one malfunction when

16  Mr. Duron's device was implanted.

17        At the time Mr. Duron's device was

18  implanted, Guidant didn't know the root cause of that

19  one malfunction.  Guidant adequately warned Dr. Higgens,

20  Mr. Duron's physician, of the risk of random component

21  failure at the time, which is all they knew at that

22  time.  Guidant never concealed the failure mechanism to

23  the FDA or anyone.

24        Mr. Duron never relied on anything Guidant

25  said or didn't say or represented in selecting his

1   there is a much greater weight of authority out there

2   from the Eighth Circuit and beyond, that if you apply it

3   to the facts here, you are going to conclude that there

4   is preemption of all of the claims we identify in the

5   brief.

6          And, you know, if this case isn't appropriate

7   for preemption, Your Honor, when you have an

8   extraordinarily rare event where the company brought it

9   to the attention of the FDA right along, and they are

10  arguing that you should have used a different design,

11  different manufacturing process, you should have warned

12  differently, I can't hardly think of a case in which

13  preemption wouldn't apply.  So, we suggest to you that

14  preemption is appropriate in this case for all of the

15  claims we identify.  We agree with them that a true

16  manufacturing defect claim -- in other words, we deny

17  that there is one in this case, but he agree that a

18  manufacturing defect claim is exempted out of the reach

19  of 360k.  And we will probably quarrel with them over

20  what that means, but this motion would not address that

21  specific issue, Your Honor.

22          THE COURT:  I'm not sure what I expect in

23  response.  I will ask the same question of opposing

24  counsel on this; but, you know, listening to the

25  argument and going way back to the opening remarks this

1   morning, you know, how -- I suppose maybe it is called

2   good advocacy, but I don't think either one of you are

3   going to probably characterize it that way in a moment,

4   and you will mean it respectfully to the other side.

5   But, you describe the history of the lack of

6   concealment, the lack of being entirely forthright with

7   the FDA.   That is quite different than the opening

8   remarks this morning of counsel where everything was

9   said short of a criminal conspiracy, in terms of not

10  being forthright with the FDA.   You both can't be

11  correct.

12              MR. PRATT:   Yeah, but -- well, I'm right.

13              THE COURT:   And like I said, regardless of

14  how I look at that, that still makes Judge Rosenbaum's

15  decision an anomaly.   But, you both described the

16  history entirely different.

17              I mean, I don't think it would be easy to

18  describe it as two sides to the same story, because I

19  mean, I have got I don't know how many documents in my

20  chambers, in my Clerks' chambers, but I don't think you

21  can just say, well, they are just two different versions

22  of the same events.   But, how do I reconcile those?

23              MR. PRATT:   I think that they are trying to

24  overcomplicate the issue, Your Honor.   I think the issue

25  of whether we submitted every scrap of paper to the FDA